

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

## ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed June 26, 2012**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| R.E. LOANS, LLC, | § | Case No.:  11-35865-BJH |
| R.E. FUTURE, LLC, | § | |
| CAPITAL SALVAGE,  a California | § | Jointly Administered |
| corporation, | § | |
| | § | |
| | § | |
| Debtors. | § | |
| | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING DEBTORS' MODIFIED FOURTH AMENDED JOINT CHAPTER 11
### PLAN OF REORGANIZATION, DATED JUNE 1, 2012

### [Related Docket No. 905]

The *Modified Fourth Amended Joint Chapter 11 Plan of Reorganization, Dated June 1,*

*2012* [Docket No. 905] (as may be further amended, modified, and/or supplemented, the

"**Plan**")[1] having been filed with this Court on June 1, 2012; and the *Debtors' Plan Supplement*

[Docket No. 919] on June 8, 2012 (as the documents contained therein may be further amended,

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Plan.

modified, and/or supplemented, collectively, the "**Plan Supplement**"); and this Court having entered, after due notice and a hearing, an order [Docket No. 847] (the "**Disclosure Statement Order**"), dated May 16, 2012, (i) approving the *Disclosure Statement For The Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization, dated May 15, 2012* [Docket No. 843] (the "**Disclosure Statement**"); (ii) approving the procedures to solicit acceptances of the Debtors' proposed Plan, and (iii) scheduling a hearing and establishing notice and objection procedures for confirmation of the Debtors' proposed Plan; and the Disclosure Statement and Plan having been distributed or made available to holders of Claims against or Interests in the Debtors and other parties in interest as provided in the Disclosure Statement Order; and the hearing to consider confirmation of the Plan having been held before this Court on June 20, 2012 (the "**Confirmation Hearing**"); and due notice of the Plan and the Confirmation Hearing having been provided to holders of Claims against or Interests in the Debtors and other parties in interest in accordance with the Disclosure Statement Order, title 11 of the United States Code (the "**Bankruptcy Code**"), and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), as established by the certificate of service, mailing, filed with this Court (the "**Certificate of Service**"),[2] and such notice being sufficient under the circumstances and no further notice being required; and after full consideration of (i) the *Debtors' Memorandum of Points and Authorities in Support of Confirmation of the Modified Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 942] (the "**Confirmation Memorandum**"), (ii) the *Declaration of James Weissenborn in Support of Confirmation of the Modified Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 943] (the "**Confirmation Declaration**"), filed on June 19, 2012; (iii) the *Declaration of Chad M. Tolleson of AlixPartners,*

---

[2] The Certificate of Service has been filed at Docket No. 877.

*LLP Regarding Voting on, And Tabulation of Ballots Accepting and Rejecting the Debtors'*
*Fourth Amended Joint Chapter 11 Plan of Reorganization Dated May 15, 2012, as Modified*
[Docket No. 944] (the "**Voting Certification**"); (iv) *Stipulation To Resolve Disputes With*
*Development Specialists, Inc. Regarding Classification Of Claim And Modified Plan Of*
*Reorganization* (the "**DSI Stipulation**") [Docket No. 927]; (v) each of the objections to
confirmation of the Plan (the "**Objections**"); and (vi) all Objections having been withdrawn,
resolved, or otherwise overruled or addressed as set forth herein or by separate further order of
this Court; and upon all of the proceedings had before this Court and upon the arguments of
counsel and all of the evidence adduced at the Confirmation Hearing; and this Court having
determined based on all of the foregoing that the Plan should be confirmed, as reflected by this
Court's rulings made herein and at the Confirmation Hearing (which rulings by this Court at the
Confirmation Hearing are incorporated herein for all purposes); and after due deliberation and
sufficient cause appearing therefor, this Court hereby

FINDS, DETERMINES, AND CONCLUDES THAT:

    A.   <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in
the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of
law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to
Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions
of law, they are adopted as such. To the extent any of the following conclusions of law
constitute findings of fact, they are adopted as such.[3]

---

[3] All rulings announced by this Court on June 20, 2012, are hereby incorporated herein.

**Jurisdiction and Venue**

B.        Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  This Court has jurisdiction over the Cases (defined below) pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(6) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Cases**

C.        Commencement and Consolidation of the Cases.  On September 13, 2011, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, initiating voluntary cases [Case Nos. 11-35865-BJH, 11-35868-BJH, and 11-35869-BJH] (the "**Cases**").

D.        Official Committee of Noteholders.  The United States Trustee appointed the Official Committee of Noteholders (as reconstituted, the "**Noteholders' Committee**") in the Cases on September 22, 2011.

E.        Judicial Notice.  This Court takes judicial notice of (i) as appropriate, proofs of claims filed in the Cases, and (ii) the docket of the Cases maintained by the Clerk of this Court and pleadings reflected therein, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of the Cases.

**Solicitation and Notice**

F.        Solicitation and Notice.  On May 16, 2012 this Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation of votes on the Plan.  The Solicitation

Packages (as defined in the Disclosure Statement Order) were served in compliance with the Bankruptcy Rules and the Disclosure Statement Order. The service of the Solicitation Packages was adequate and sufficient under the circumstances of the Cases, and adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Rules and the Disclosure Statement Order.

G.  Voting.  Votes on the Plan were solicited after disclosure to holders of Claims against or Interests in the Debtors of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**").

H.  Plan Supplement.  On June 8, 2012, the Debtors filed the Plan Supplement, which, as amended from time to time, includes the following documents (collectively, the "**Plan Documents**") [Docket No. 919]: (a) Liquidating Trust Agreement and Declaration of Trust (the "**Liquidating Trust**"); (b) the Loan and Security Agreement, to be executed by the Reorganized Debtors and Wells Fargo Finance, LLC ("**Wells Fargo**"), providing for the exit credit facility effective as of the Effective Date (as defined in the Plan) (the "**Wells Fargo Exit Facility**"); (c) the Management and Servicing Agreement, to be executed by the Reorganized Debtors in favor of Wells Fargo; (d) Amended and Restated Operating Agreement for R.E. Loans, LLC; and (e) Schedule of Executory Contracts to be Assumed.[4] All of the foregoing materials comply

---

[4] Other documents filed with the Plan Supplement have been rendered unnecessary by reason of subsequent events and are not considered as a part of this Confirmation Order.

with the terms of the Plan, and the filing and notice of such documents was good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required.

<u>**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**</u>

I.     <u>Burden of Proof</u>.  The Debtors have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

J.     <u>Bankruptcy Rule 3016(a)</u>.  The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

K.     <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

      i.     <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  As required by section 1123(a)(1), in addition to Administrative Claims, DIP Facility Claim, and Priority Tax Claims, which need not be classified, Article I and IV of the Plan designates 26 Classes of Claims against and Interests in the Debtors. As required by section 1122(a) of the Bankruptcy Code, the Claims (to the extent treated as a Class) placed in each Class are substantially similar to other Claims in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

      ii.     <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Articles I, IV and V of the Plan specify that Classes REL 2, CS 2, and REF 2 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

      iii.     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Articles I,  IV and V of the Plan designate Classes REL 1, REL 3 through REL 10, CS 1, CS 3 through CS 8, and REF 1, REF 3 through REF 8 as impaired, and Article IV and V of the Plan sets forth the

treatment of such impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.     No Discrimination (11 U.S.C. § 1123(a)(4)). Article IV of the Plan provides for the same treatment by the Debtors for each Claim in each respective Class, unless the holder of a particular Claim has agreed to a less favorable treatment in respect of such Claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

v.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)). As required by section 1123(a)(5), Articles VI and VII of the Plan provide for adequate means for implementation of the Plan, including without limitation, (a) the existence of the Reorganized Debtors; (b) the documents that will govern the Reorganized Debtors after the Effective Date; (c) the approval of the **Wells Fargo Exit Facility** and related documentation; (d) the establishment of the Liquidating Trust; (e) consummation of the transactions contemplated by the Liquidating Trust and the Trust Agreement; and (f) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing.

vi.     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The New Equity Interests in Reorganized R.E. Loans shall be issued to the Liquidating Trust, and the New Equity Interests in Reorganized Capital Salvage and Reorganized R.E. Future, LLC, will be vested in Reorganized R.E. Loans, and no non-voting equity securities will be issued by any of the Reorganized Debtors.

vii.    Designation of Managers, Directors and Officers of the Reorganized Debtors (11 U.S.C. § 1123(a)(7)). Article VII of the Plan contains provisions with respect to the managers, directors, and officers of the Reorganized Debtors. Effective as of the Effective Date, Mackinac Partners, LLC shall serve as the sole manager of Reorganized R.E. Loans and Reorganized R.E. Future, and James A. Weissenborn shall serve as the sole director and the President and sole officer of Reorganized Capital Salvage. Consistent with the Amended and Restated Operating Agreement for R.E. Loans, LLC, the sole manager of Reorganized R.E. Loans shall be Mackinac Partners, LLC, in accordance with the Wells Fargo Exit Facility, until and unless either (i) Wells Fargo and the Liquidating Trustee mutually agree in writing on a

successor to Mackinac Partners, LLC as Manager, or (ii) the Wells Fargo Exit Facility is indefeasibly paid in full in Cash and terminated, in which case the Liquidating Trustee can select and appoint a successor to Mackinac Partners, LLC as Manager unilaterally.

viii.    Additional Plan Provisions (11 U.S.C. § 1123(b)).    The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

ix.    Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)).    Pursuant to the Plan, Classes REL 2, CS 2, and REF 2 are unimpaired and all other Classes are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

x.    Assumption and Rejection of Executory Contracts (11 U.S.C. 1123(b)(2)).    Article VIII of the Plan provides for the rejection of the executory contracts and unexpired leases of the Debtors as of the Effective Date, except for any executory contracts or unexpired leases that (a) have previously expired or terminated by their own terms, (b) have been assumed or rejected pursuant to an order of this Court pursuant to Bankruptcy Code section 365, or (c) are assumed pursuant to the Plan.    The Plan also constitutes and incorporates, in Article VIII, a motion by the Debtors to assume, as of the Effective Date, all executory contracts or unexpired leases included in the Plan Supplement. Such executory contracts and unexpired leases may be assumed as modified pursuant to the terms noted in the Plan Supplement and the Plan Documents.    This Confirmation Order constitutes an order of this Court under section 365 of the Bankruptcy Code approving the rejection or assumption, as applicable, of such Executory Contracts (as defined in the Plan) as of the Effective Date.

xi.    Other Appropriate Provisions (11 U.S.C. § 1123(b)(2)). The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Claims, (b) approval of and authorization to enter into the Trust Agreement, (c) Reorganized Debtors' or the Liquidating Trustee's, as applicable, retention of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with

respect to) certain claims and causes of action against third parties, to the extent not waived and released under the Plan, (d) resolution of Disputed Claims, (e) allowance of certain Claims, and (f) exculpations of certain parties. The retained Causes of Action do not include any claims released by the Wells Fargo Release or the Plan Compromise, as discussed in more detail below.

    xii.    Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)). The Plan provides for various compromises and settlements comprising the Plan Compromise, the terms of which are described more fully in in the Plan, including in Sections 4.8 and 7.6(c) thereof. The Plan Compromise is approved as fair and equitable.

    xiii.    <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>. The Plan (i) leaves unaffected the rights of holders of Claims in Classes REL 2, CS 2, and REF 2, and (ii) affects the rights of holders of Claims in all other Classes.

    xiv.    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. The Plan does not provide for the curing of any defaults. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

    L.    <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Debtors, as the plan proponents, have complied with the applicable provisions of the Bankruptcy Code. Specifically:

    i.    The Debtors are eligible debtors under section 109 of the Bankruptcy Code;

    ii.    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court; and

    iii.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

    M.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have

proposed the Plan (including the Plan Supplement, and all other documents necessary to

effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of the Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Assets (as defined in the Plan) and expeditiously distributing that value to Creditors. The Plan was negotiated at arm's length among the Debtors, the Noteholders' Committee, Wells Fargo, and the Debtors' largest unsecured creditor, the Liquidating Trust for Mortgage Fund '08, LLC ("**MF'08**"), Development Specialists, Inc. ("**DSI**"), and their respective advisors. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith, at arm's length, and are consistent with sections 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Estates' successful maximization of value for Creditors. Such provisions were not included in the Plan for any improper purpose.

N.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtors, the Estates, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Cases, or in connection with the Plan and incident to the Cases, has been approved by, or is subject to the approval of this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O.     <u>Managers, Directors, and Officers (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identities of the persons to serve as managers, directors, and officers of the Reorganized Debtors, as of the Effective Date, were disclosed.  Mackinac Partners, LLC shall serve as manager of Reorganized R.E. Loans and R.E.

Future and James A. Weissenborn will serve as president and sole director of Reorganized Capital Salvage.  Dennis Faulkner will serve as the Liquidating Trustee.  The appointment of such persons is consistent with the interests of the Estates and with public policy.

P.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.

Q.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The "best-interests" test is satisfied with respect to each Class of Impaired Claims.  As demonstrated by the evidence proffered or adduced at the Confirmation Hearing, including the Liquidation Analysis attached to the Disclosure Statement, which employed commonly accepted methodologies and reasonable assumptions, each holder of an Impaired Claim against the Estates either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

R.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes REL 2, CS2 and REF 2 are Unimpaired by the Plan; accordingly, holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 1 (Wells Fargo), Class 5 (Holders of General Unsecured Claims), Class REL 8 (Noteholders), and Class REL 9 (DSI) (the "**Impaired Accepting Classes**"), which are impaired by the Plan and entitled to vote, have voted to accept the Plan, in accordance with sections 1126(b) and (c) of the Bankruptcy Code.  There are no creditors with Allowed Claims in the following Classes: Class 4, Class 6, and Class 7.  The following Classes

will receive no distribution under the Modified Plan: REL 10, REF 8, and CS 8 (the "**Deemed Rejecting Classes**"). Each of these Classes is deemed to have voted to reject the Plan. Although 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the Deemed Rejecting Classes, the Plan can still be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, for the reasons stated below. Class 3 (Secured Tax Claims) has also voted to reject the Plan, but the Plan can be confirmed over the rejection of such Class pursuant to Bankruptcy Code §§ 1129(a)(9)(D) and 1129(b)(2)(A)(i).

S.      Treatment of Administrative Expense Claims, DIP Facility Claim, and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, Priority Tax Claims, and the DIP Facility Claim pursuant to Articles III of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

T.      Acceptance By Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). Each Class 1 and each Class 5 is impaired under the Plan and entitled to vote, and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, if any. The same is true with respect to Class REL 8 and Class REL 9. Therefore, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

U.      Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement and evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, except to the extent that an orderly liquidation is proposed by the Plan. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

V.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on the Effective Date pursuant to Section 3.1(c) of the Plan by the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

W.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors have no retirees or retirement benefits, and accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code are inapplicable in the Cases.

X.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation; accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Cases.

Y.      Debtors are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals; accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Cases.

Z.      No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  Bankruptcy Code section 1129(a)(16) is inapplicable as it only applies to the "transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation, or trust[,]" and the Debtors are moneyed businesses or commercial corporations.

AA.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  The Debtors have requested that the Court confirm the Plan notwithstanding the fact that the Deemed Rejecting Classes, Class CS 5, and Class 3 rejected the Plan.  The Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, Class CS 5, and Class 3.  Since each class (other than Class CS 5)

under the Plan is of a different rank, with different legal rights, there is no unfair discrimination against any Class.

BB.     The Plan does not discriminate unfairly as against Class CS 5.  Class CS 5 is comprised of Holders of General Unsecured Claims, as are Class REL 5, Class REF 5 and Class REL 8 (after implementing the Plan Compromise under which Class REL 8 releases its lien.  It is fair and equitable to allow each of these Classes to receive the same Beneficial Interests in the Liquidating Trust.

CC.     The Plan does not "discriminate unfairly" with respect to the holders of Claims in Classes REL 7, REF 7, and CS 7 (Claims subordinated due to Bankruptcy Code sections 510(b) and (c)) because there is no disparate treatment of similar Claims under the Plan.  Additionally, there is no unfair discrimination as to the Holders of Interests in Classes REF 8, CS 8, and REL 10, because the Plan does not provide for distributions to any Holders of Interests under the Plan. The Plan is also fair and equitable as to the holders of Claims in Classes REL 7, REF 7, and CS 7 and holders of Interests in Classes REL 10, REF 8, and CS 8.  There no claims that are junior to those subordinated claims contained in Classes REL 7, REF 7, and CS 7 and no interests that are junior to those of the holders of Interests in Classes REL 10, REF 8, and CS 8.  The Interests in Class REL 10, Class REF 8 and Class CS 8 are subordinate to the Claims in each Class 7, but the junior interest will receive no distributions under the Plan.  The Classes junior to Class CS 5 are receiving no distribution under the Plan.  No senior Class is receiving more than payment in full. Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with respect to each Class 7, Class CS 8, Class REF 8 and Class REL 10, and the Plan may be confirmed notwithstanding the rejection by these Classes.

DD.     The one creditor in Class CS 5 that rejected the Plan is owed less than $7,000 and has not filed an objection to confirmation.  The creditor is the former accounting firm for the Debtors.  There is nothing in the record explaining why this creditor voted to reject the Plan .

EE.     The Modified Plan satisfies Section 1129(b)(2)(A), in addition to Section 1129(a)(9)(D), with respect to Secured Tax Claims.

FF.     Section 1129(b)(2)(A)(i) provides as follows:

> (2)     For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> . . . .
>
> (A)     With respect to a class of secured claims the plan provides ——
>
> > (i)     (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
> >
> > (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> . . . .

The Modified Plan satisfies this requirement because it provides for payment in full of each Secured Tax Claim at the earlier of (a) when the REO Property securing that Secured Tax Claim is sold, or (b) five (5) years after the Petition Date.  The Modified Plan provides for payment of interest at the statutory rate, as required by Bankruptcy Code § 511(a).  Pending payment in full, each Holder of a Class 3 Claim retains its Lien on its existing collateral.  This treatment guarantees each holder of a Secured Tax Claim that it will retain its lien until it is fully paid (as

required by Section 1129(b)(2)(A)(i)(I)) and will receive payments with a present value at least equal to its allowed claim, using the above-market rate required by Bankruptcy Code § 511 (as required by Section 1129(b)(2)(A)(i)(II)).

GG.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only chapter 11 plan that has been filed in the Cases. Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this Bankruptcy Case.

HH.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

II.    <u>Not Small Business Case (11 U.S.C. § 1129(e))</u>.  This is not a small business case, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in this Bankruptcy Case.

## Compliance with Section 1125 of the Bankruptcy Code

JJ.    <u>Good-Faith Solicitation (11 U.S.C. 1125(e))</u>.  Based on the record before the Court, (i) the Debtors and their respective Professionals are deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and therefore will not, on account of such solicitation, be liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.5 of the Plan.

## Compliance with Section 1126 of the Bankruptcy Code

KK.     Acceptance of Plan (11 U.S.C. § 1126). Pursuant to section 1126 of the Bankruptcy Code, the Plan has been accepted by the Impaired Accepting Classes, i.e., Classes REL 1, 5, 8 and 9, Class CS 1, and Classes REF 1 and 5)

## Compliance with Bankruptcy Rule 3019

LL.     Plan Modifications (11 U.S.C. § 1127 and Bankruptcy Rule 3019). Based on the record before the Court, the Plan, as further modified by the provisions set forth below and described in the DSI Stipulation, satisfies the requirements of Bankruptcy Rule 3019. Pursuant to the Solicitation Order, the Debtors were authorized to solicit votes to accept or reject the *Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 845], filed on May 15, 2012 (the "**Original Plan**"). After entry of the Disclosure Statement Order, the Debtors made certain modifications to the Original Plan, which resulted in the filing of the Plan. The Court has reviewed the modifications to the Plan, and finds that none of the modifications adversely changed the treatment of the claim of any creditor or the interest of any equity security holder so as to require resolicitation pursuant to Bankruptcy Rule 3019. The modifications primarily centered on two minor modifications of their agreement (the "**MF'08 Agreement**") with MF'08. The first modification was to clarify that, contrary to certain parties' prior understanding, the amount of MF'08's Allowed General Unsecured Claim will not be reduced by the cash proceeds from the disposition of any of the notes receivable it acquired from R.E. Loans in 2008. This modification does not adversely change the treatment of the Claim of any Creditor so as to require resolicitation of any votes pursuant to Bankruptcy Rule 3019 because the projected difference in the amount of MF08's Allowed General Unsecured Claim is *de minimis* compared to the aggregate amount of all other Allowed General Unsecured Claims and Noteholder Claims.

Accordingly, this modification does not require the resolicitation of any votes on the Plan under section 1127 of the Bankruptcy Code or Bankruptcy Rule 3019.

MM.   The second modification to the MF'08 Agreement does not impact creditors in the Debtors' cases.  Initially, as part of the MF'08 Agreement the Plan provided that MF'08 would not be allowed to assert fraudulent transfer actions against any non-insider creditor that received money from R.E. Loans that might be traced to money that R.E. Loans received from MF'08. Under the Plan, as modified, this release is limited only to non-insider Noteholders that received such transfers.  This modification does not adversely change the treatment of the Claim of any Creditor so as to require resolicitation of any votes pursuant to Bankruptcy Rule 3019; accordingly, this modification does not require the resolicitation of any votes on the Plan under section 1127 of the Bankruptcy Code or Bankruptcy Rule 3019.

NN.   The implementation of the DSI Stipulation does not adversely change the treatment of the Claim of any Creditor so as to require resolicitation of any votes pursuant to Bankruptcy Rule 3019.  Pursuant to the DSI Stipulation, DSI's Claim has been classified under Class REL 9 of the Plan.  Further, although DSI has agreed not to receive a subordinated lien on Reorganized R.E. Loans' assets, DSI's Claim will still receive priority of payment ahead of Allowed General Unsecured Claims and Noteholder Claims.  Accordingly, the DSI Stipulation does not adversely change the treatment of the Claim of any Creditor so as to require resolicitation of any votes pursuant to Bankruptcy Rule 3019; accordingly, this modification does not require the resolicitation of any votes on the Plan under section 1127 of the Bankruptcy Code or Bankruptcy Rule 3019.

OO.   Pursuant to 11 U.S.C. § 1127 and Bankruptcy Rule 3019, all holders of Claims that voted to accept the Original Plan are deemed to accept the Plan.

PP.     The terms of the Plan, including, without limitation, the Plan Supplement, the Plan Documents, all exhibits and schedules thereto, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing, including, without limitation, the Trust Agreement, the Wells Fargo Exit Facility Loan Documents (as defined in the Plan), and all related exhibits and supplements (collectively, the "**Plan Documents**") are incorporated herein by reference, and are, except as addressed herein or in any future order of this Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

QQ.     The Plan and the Plan Documents have been negotiated in good faith and at arm's length and shall, on and after the Effective Date, except as addressed herein or in any future order of this Court contemplated by this Confirmation Order, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

RR.     Pursuant to section 1142(a) of the Bankruptcy Code, except as addressed herein or in any future order of this Court contemplated by this Confirmation Order, the Plan and the Plan Documents will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.   The Debtors, the Noteholders' Committee, Wells Fargo, MF'08, the Reorganized Debtors, the Liquidating Trustee, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby, and (ii) take any actions authorized and directed by this Confirmation Order.

**Exit Facility Commitment Letter and Wells Fargo Exit Facility**

SS.      The Debtors filed with this Court a certain exit financing commitment letter (the "**Exit Facility Commitment Letter**"), dated November 17, 2011 and attached as an exhibit to the DIP Financing Order, setting forth the terms and conditions under which Wells Fargo would provide to the Reorganized Debtors a senior secured credit facility.  The Court finds that there is cause to approve the Exit Facility Commitment Letter, and that entry of the Exit Facility Commitment Letter is in the best interests of the Debtors, the Estates, the Creditors of Estates, and the Reorganized Debtors.  Accordingly, the Debtors are hereby authorized and directed to (i) enter into the Exit Facility Commitment Letter, and (ii) pay to Wells Fargo all fees, costs, and expenses as set forth in the Exit Facility Commitment Letter, and the Debtors and the Reorganized Debtors shall be bound by the terms and conditions of the Exit Facility Commitment Letter.

TT.      The Debtors and the Reorganized Debtors shall be bound by the Wells Fargo Exit Facility Loan Documents, including the Loan and Security Agreement.  The Wells Fargo Exit Facility Loan Documents (including all loan, collateral security, pledge, management and servicing agreement, and blocked account agreements), to be executed by the Reorganized Debtors, shall be satisfactory to Wells Fargo and its counsel, and shall contain such conditions, covenants, defaults, representations and remedies consistent with the Exit Facility Commitment Letter and the Loan and Security Agreement, admitted into evidence at the Confirmation Hearing.

UU.      The Wells Fargo Exit Facility shall be secured by a first-priority, perfected security interest in all now existing and hereafter acquired property of the Reorganized Debtors, wherever located, of any kind or nature (such priority to be subject to senior ad valorem taxes against the REO Property).  The property of the Reorganized Debtors covered by the security

interests in favor of Wells Fargo shall include, without limitation, the following property of the Reorganized Debtors, whether acquired prior to or after the Effective Date, whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof (including, without limitation, claims of the Reorganized Debtors against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements thereof, and wherever located: all of the existing and after-acquired real and personal, tangible and intangible, assets of the Reorganized Debtors, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, licensing agreements, permits, securities (whether or not marketable), equipment, fixtures, leasehold interests and real property interests, franchise rights, patents, trademarks, tradenames, copyrights, intellectual property, general intangibles, investment property, commercial tort claims arising from events that occur after the Effective Date, and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds (as more fully described in the Wells Fargo Exit Facility Loan Documents, the "**Collateral**").   The Collateral shall not include those Causes of Action that vest in the Liquidating Trust on the Effective Date.

VV.   The liens and security interests granted by the Reorganized Debtors in favor of Wells Fargo are hereby approved, authorized, and shall be deemed to be validly created, perfected and enforceable on the Effective Date, and are first-priority liens against the Collateral, subject only to senior liens securing ad valorem taxes on the REO Property.   Each of the Reorganized Debtors is hereby authorized, without further approval of this Court, or any of the Reorganized Debtors' Board of Managers, Board of Directors, members, or shareholders, to execute and deliver to Wells Fargo all documentation relating to the Wells Fargo Exit Facility.

Nothing in this Confirmation Order or in the Plan shall release, adversely modify or impair the enforceability or priority of any obligation or lien entered into or created in connection with the Wells Fargo Exit Facility Loan Documents (including the Loan and Security Agreement). By the terms of this Confirmation Order, but subject to the Wells Fargo Exit Facility Loan Documents (including the Loan and Security Agreement), the Reorganized Debtors shall grant to Wells Fargo valid and duly effected, first-priority liens on and security interests in all of the Reorganized Debtors' Assets as more particularly described therein, subject only to senior ad valorem taxes against the REO Property.

WW. The Wells Fargo Exit Facility Loan Documents are in the best interests of the Debtors, the Estates, the Creditors of the Estates, and the Reorganized Debtors, have been negotiated in good faith and at arm's length (and without intent to hinder, delay or defraud any creditor of the Debtors or the Reorganized Debtors), and the transactions contemplated thereunder shall be deemed to have been entered into in good faith and for good and valuable consideration and in exchange for reasonably equivalent value.

XX. The terms and conditions of the Wells Fargo Exit Facility Loan Documents (including the Loan and Security Agreement) and the form thereof as may be finalized, upon execution thereof by the Reorganized Debtors, shall constitute the legal, valid and binding obligations of each of the Reorganized Debtors, enforceable against such Reorganized Debtors in accordance with their respective terms, and are entered into for good and valuable consideration.

YY. Each of the Reorganized Debtors is barred and enjoined from filing a voluntary petition under Chapter 7 or 11 of the Bankruptcy Code prior to one (1) year after the indefeasible payment in full in cash of all obligations owing under the Wells Fargo Exit Facility.

ZZ.    This Court shall retain jurisdiction over the matters described in Section 12.15 of the Plan over the Reorganized Debtors and their assets, including, without limitation, the matters described in the DSI Stipulation.

### Executory Contracts and Unexpired Leases

AAA.  The Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases pursuant to Article VIII of the Plan.   Each assumption or rejection of an executory contract or unexpired lease as provided in Article VIII of the Plan shall be legal, valid, and binding on Reorganized Debtors and all non-debtor counterparties to such contracts or leases, all to the same extent as if such assumption or rejection has been effectuated pursuant to an appropriate authorizing order of this Court before the Effective Date under section 365 of the Bankruptcy Code.   Each assumption or rejection of an executory contract or unexpired lease as provided in Article VIII of the Plan shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

BBB.  The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption of executory contracts and unexpired leases pursuant to the Plan and the Plan Documents.   All executory contracts or unexpired leases listed on Exhibit "7" to the Plan Supplement shall be assumed with no cost or financial responsibility to the Estates, Reorganized Debtors, or the Liquidating Trustee for that assumption except as provided in Exhibit "7" to the Plan Supplement, the Plan, and the Plan Documents.

## Exculpations, Injunctions, and Releases

CCC.   This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, injunctions, and releases set forth in Article X of the Plan.  The Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article X of the Plan.  Such provisions are fair and reasonable and are in the best interests of the Debtors, the Estates, and parties-in-interest.   Further, the exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence.   Based on the record of the Cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunctions, exculpations, and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

## Settlements and Compromises Pursuant to and Incorporated in the Plan

DDD.  The Plan allows for the Estates to compromise and settle Claims against or Interests in the Debtors and certain claims held by the Estates.   The terms of certain compromises and settlements are included in the Plan, the Plan Documents, any separate stand-alone motions filed with this Court and heard at or prior to the Confirmation Hearing, including the Motion for Approval of Settlement Agreement Between R.E. Loans, LLC and Mortgage Fund '08 Liquidating Trust [Docket No. 907] and announcements or agreements read into the record at the Confirmation Hearing.  (All such compromises and settlements, including the Plan Compromise mentioned in Article IV of the Plan and the Plan Supplement, are, collectively, the "**Settlements**.")  Because the Settlements are integral to the implementation of the Plan, they are hereby approved as part of the Plan.  The Settlements are the product of good-faith, arm's-length negotiations.   The Settlements represent reasonable compromises and settlements of Claims

against the Debtors and certain claims held by the Estates. The Settlements are in the best interests of the Estates and the Creditors thereof. Considering (i) the probability of success in litigation with due consideration for uncertainty in fact and law; (ii) the complexity and likely duration of the litigation, and the expense, inconvenience, and delay necessarily attending to that litigation; and (iii) all other factors bearing on the wisdom of the Settlements, the Plan and the Settlements satisfy the requirements of Bankruptcy Rule 9019 and section 1123(b)(3), and the Settlements are hereby approved. On behalf of the Estates, the Debtors are authorized to execute any document necessary, in their discretion, to effectuate or implement the Settlements that are in the best interests of the Estates.

## Other Findings

EEE.     Transfers by Debtors.  All transfers of property of the Estates, including, without limitation, the transfer and assignment of assets to the Liquidating Trust, shall be free and clear of all Liens, Claims, encumbrances, and other interests, except as to such liens in favor of Wells Fargo under the Wells Fargo Exit Facility (and with respect to the senior ad valorem tax liens against the REO Property).

FFF.     Retention of Jurisdiction.  This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Section 12.15 of the Plan and section 1142 of the Bankruptcy Code.  In addition, this Court shall retain jurisdiction over matters concerning the REO Property and the Notes Receivable (including, but not limited to, the disposition of same, claims or liens with respect to same, or any disputes with respect thereto), to the extent that the Reorganized Debtors wish to obtain Court authority for such transactions notwithstanding the terms of the Plan and the emergence of the Debtors from these bankruptcy proceedings.

GGG.  <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all issues raised by objections to confirmation of the Plan, or which might have been raised, and the objections to confirmation have been fully and fairly litigated.  Except as compromised and settled herein, all objections to confirmation of the Plan are hereby overruled.

HHH.  <u>Certain Exhibits to Disclosure Statement are Hereby Incorporated Herein</u>.  The Causes of Action as defined in the Plan shall be preserved by the Estates and transferred to the Liquidating Trust.  Exhibit "1" to the Plan sets forth a non-exclusive list of the retained Causes of Action.  All Note Receivable Claims (including the Notes Receivable and the REO Property) shall be preserved by the Estates and transferred to the Reorganized Debtors.

<strong><u>The Plan Satisfies Confirmation Requirements</u></strong>

III.    Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The solicitation packages are approved as appropriate and satisfactory based on the circumstances of the Cases and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The solicitation of votes on the Plan complied with the solicitation procedures in the Disclosure Statement Order and was appropriate and satisfactory based on the circumstances of the Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2.     Confirmation.  The Plan in the form attached hereto as Exhibit "A" and each of its provisions shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code, provided, however, that the Plan shall be modified by this Confirmation Order to incorporate the provisions of the DSI Stipulation in all respects.   The terms of the Plan Documents are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

3.     Plan Modification.  The Plan, as modified from the Original Plan, including with respect to the treatment of DSI by the DSI Stipulation, is approved and confirmed, and the Plan is deemed accepted by all Creditors who previously accepted the Original Plan.   This Court approves the DSI Stipulation in all respects and finds that the settlement reflected by the DSI Stipulation is fair and equitable, in the best interests of creditors and parties in interest, and was negotiated at arm's-length and in good faith.

4.     Objections.  All objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein or addressed by this Confirmation Order are overruled for the reasons stated on the record.

5.     Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind the Debtors, the Noteholders' Committee, Wells Fargo, DSI, MF'08, and all current and former holders of a Claim against, or Interest in, the Debtors and such holders' respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan, whether or not such holder accepted the Plan, and whether or not such holder is entitled to any distribution under the Plan.

6.     Plan Classification Controlling.  The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of

the Plan and the DSI Stipulation. DSI's Claim, if allowed, will be a Class REL 9 Claim pursuant to the provisions of the DSI Stipulation. The classification set forth on the Ballots tendered or returned by Creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, Reorganized Debtors, or the Liquidating Trust for purposes other than voting on the Plan.

7.    <u>Distributions Under the Plan</u>.  All distributions under the Plan shall be made in accordance with Article IX of the Plan, as modified by the DSI Stipulation.

8.    <u>Restructuring Transactions</u>.  The restructuring transactions set forth in the Plan are approved in all respects and the Debtors are authorized to take all actions in order to effectuate and implement the restructuring transactions in the order specified therein.

9.    <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>.  On the Effective Date, pursuant to the Plan and §§ 1123, 1141 and 1146(a), the Debtors and their Estates are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee, for the benefit of the Liquidating Trust, all of the respective Debtors' and Estates' right, title and interest in and to the Trust Assets free and clear of all Liens, Claims, encumbrances or interests of any kind in such property of any other or Holders of Claims against or Interests in the Debtors, except as otherwise expressly provided for in the Plan.  To the extent required to implement the transfer of the Trust Assets from the Debtors and Estates to the Liquidating Trust and the Liquidating Trustee as provided for herein, all Persons and governmental entities shall cooperate with the Debtors and the Estates to assist the Debtors and the Estates to implement said transfers.

10.    <u>Authority of Reorganized Debtors To Operate Business</u>.    From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, subject to the terms and conditions of the Plan.

11.    <u>Release of Liens</u>.    Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, including the Trust Agreement, concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens, and other security interests against property of the Estates shall be fully cancelled, terminated, released, discharged and extinguished (except to the extent expressly reinstated under the Plan), and all right, title, and interest of any holder of such mortgages, deeds of trust, financing statements, liens, and other security interests, including any rights to any collateral thereunder, shall revert to the Reorganized Debtors and its successors and assigns; <u>provided</u>, <u>however</u>, that nothing contained in the Plan or this Confirmation Order shall release the Liens securing the existing loans from Wells Fargo to the Debtors and the Estates (i.e. the Wells Fargo Prepetition Claims and the DIP Facility Claim) until such loans are indefeasibly paid in full in cash as provided in the Plan; and such Liens shall continue and attach to the Reorganized Debtors' Assets pursuant to the terms and conditions of the Wells Fargo Exit Facility Loan Documents and shall remain valid and perfected and shall secure all Obligations under the Wells Fargo Exit Facility, until the Obligations under the Wells Fargo Exit Facility are indefeasibly paid in full in cash.

12.    <u>Retained Assets</u>.    To the extent that the succession to assets of the Debtors by the Reorganized Debtors or Liquidating Trust, as the case may be, pursuant to the Plan, and/or the

grant of Liens to Wells Fargo under the Wells Fargo Exit Facility, are deemed to constitute "transfers" of property, such transfers of property to Reorganized Debtors or Liquidating Trust (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors or Liquidating Trust with good title to such property, free and clear of all Liens, Claims, encumbrances, charges, or interests, except as expressly provided in the Plan or this Confirmation Order, including with respect to the Wells Fargo Exit Facility and Wells Fargo, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) do not and shall not subject Reorganized Debtor or Liquidating Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, by laws affecting successor or transferee liability.

13.    <u>Objections to Claims</u>.

(a)    <u>General</u>.  An objection to the allowance of a Claim (other than an Administrative Expense Claim) shall be in writing and may be Filed by the Liquidating Trustee, at any time on or before the Claims Objection Deadline.  The "Claims Objection Deadline" is the later of (a) the 120th day following the Effective Date unless such period is extended by order of this Court, (b) thirty (30) days after the Filing of the proof of such Claim or Interest or (c) such other date set by order of this Court.  The Liquidating Trustee shall serve a copy of each such Objection upon the holder of the Claim to which it pertains and upon the Reorganized Debtors and the Liquidating Trustee will prosecute each Objection to a Claim until determined by a Final Order unless the Liquidating Trustee (i) compromises and settles an Objection to such Claim by written stipulation subject to Court approval, if necessary or required by applicable law, or (ii) withdraws an Objection to a Claim.  Notwithstanding anything else contained in the Plan,

any right to object to the Class REL 8 Claims shall be governed by the Plan Compromise, and the Claims of Wells Fargo and MF'08 shall not be subject to objections.

(b) <u>Administrative Expense Claims</u>. All Administrative Expense Requests for non-Professional Fee Claims must be filed with this Court no later than the Administrative Expense Bar Date, which shall be 45 days after the Effective Date unless otherwise ordered by the Court, or be forever barred. Within ten (10) business days after the Effective Date, the Debtors shall serve notice of the Effective Date and the Administrative Expense Bar Date on all creditors and parties in interest. Holders of Ordinary Course Administrative Expenses shall not be required to file Administrative Expense Requests for allowance and payment of such Claims.

Any objection to the allowance of an Administrative Expense, other than an Ordinary Course Professional Claim or a Professional Fee Claim, must be filed no later than sixty (60) days after the expiration of the Administrative Expense Bar Date (the "**Administrative Expense Objection Deadline**"). The Administrative Expense Objection Deadline may be extended only by an order of this Court. If no objection to the allowance of an Administrative Expense is filed on or before the Administrative Expense Objection Deadline, such Administrative Expense shall be deemed Allowed as of such date.

All final applications for allowance and payment of a Professional Fee Claim for services rendered or reimbursement of expenses incurred through and including the Effective Date must be filed with this Court and served no later than sixty (60) days after the Effective Date or such other date as may be fixed by this Court. All objections to allowance of Professional Fee Claims through the Effective Date must be timely filed and served in accordance with the deadlines established by this Court.

Except to the extent that any Person entitled to payment of any Allowed Professional Fee Claim agrees to a less favorable treatment or unless otherwise ordered by this Court, each holder of an Allowed Professional Fee Claim shall receive, in full satisfaction, discharge, exchange and release thereof, Cash in an amount equal to such Allowed Professional Fee Claim within five (5) Business Days after such Professional Fee Claim becomes an Allowed Professional Fee Claim, unless the Holder agrees to defer a payment of a portion of its Allowed Professional Fee Claim; provided, however, that pursuant to the terms of the DIP Financing Order and the DIP Facility, any Deferred Administrative Professional Fee Claims shall be deferred and subordinated to the indefeasible payment in full in Cash of the DIP Facility Claim and the Wells Fargo Exit Facility.

14.     Assumption or Rejection of Executory Contracts and Unexpired Leases.

(a)     General.  Subject to the occurrence of the Effective Date, Effective on the Effective Date, except for any Executory Contract that (i) previously expired or terminated by its own terms, (ii) was previously assumed or rejected by an order of this Court pursuant to § 365 or (iii) is assumed pursuant to the Plan, all executory contracts and unexpired leases not listed on the Schedule of Assumed Contracts shall be rejected by the Debtors.

This Confirmation Order shall constitute an order of this Court approving such rejections, pursuant to § 365, effective as of the Petition Date.  Any party to an executory contract or unexpired lease identified for rejection as provided herein may, within the same deadline and in the same manner established for filing objections to Confirmation of the Plan, file any objection thereto.  Failure to file any such objection within the time period set forth above shall constitute consent and agreement to the rejection.

(b)      Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan and Bar Date for Rejection Damage Claims.  Any Claim arising from the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Liquidating Trust, the Debtors, the Reorganized Debtors or any of their affiliates, successors, estates or properties, unless a Proof of Claim is filed with the Claims Agent at the following address within thirty (30) days after the Effective Date:

> R.E. Loans Claims Agent
> c/o AlixPartners, LLP
> 2101 Cedar Springs Rd., Suite 1100
> Dallas, TX 75201

Any Claim arising from the rejection of an executory contract or unexpired lease shall be treated as a General Unsecured Claim against the Debtor that is a party to that contract or lease (Class 4).  Nothing in the Plan or this Confirmation Order extends or modifies the Bar Date, except as specifically provided herein.

(c)      Claims Relating to Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan and Bar Date for Rejection Damage Claims.  On the Effective Date, each executory contract and unexpired lease that is identified in the Schedule of Assumed Contracts shall be deemed assumed by the Reorganized Debtor that is a party to that contract in accordance with the provisions and requirements of §§ 365 and 1123, and all defaults, if any, shall be deemed cured by the payment of the Cure Amount, if any, corresponding to such contract or lease.  All Cure Amounts to be paid in connection with the Executory Contracts to be assumed and assigned pursuant to the Plan shall be treated as Administrative Expenses and shall receive the treatment specified in Section 3.1 of the Plan.

Effective as of the Effective Date, each executory contract or unexpired lease assumed pursuant to this Confirmation Order shall remain in full force and effect and be fully

enforceable by the Reorganized Debtor that is a party thereto in accordance with its terms, except as modified by the provisions of the Plan, or this Confirmation Order authorizing and providing for its assumption. The Plan shall not affect any Executory Contract that was assumed, rejected or assumed and assigned pursuant to an order of this Court entered prior to the Confirmation Date.

15. <u>General Authorization</u>. The Debtors, the Reorganized Debtors, and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and to take such other actions as may be necessary to effectuate and further evidence the terms and conditions of the Plan, the Plan Documents, and any notes or securities issued pursuant to the Plan. As of the Effective Date, the Debtors, Reorganized Debtors, and the Liquidating Trustee and their respective directors, officers, members, agents, attorneys, financial advisors, and investment bankers are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable state laws (a) to grant, issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the Liquidating Trust Agreement, and the documents contained in the Plan Supplement, as modified, amended, and supplemented, in substantially the form included therein, (b) to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, and (c) to take or cause to be taken all corporate or limited liability company actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court without further approval, act or action under any applicable law, order, rule or regulation, <u>including</u>, without limitation, any action required by the

members, managers, or shareholders of the Reorganized Debtors, _including_, among other things, (a) the adoption of the Liquidating Trust Agreement, (b) entry into the Wells Fargo Exit Facility and all related agreements, (c) the termination and cancellation of any outstanding instrument, document, or agreement, if applicable, (d) the execution and delivery of all documents arising in connection with the Plan and Plan Documents, (e) all transfers of assets that are to occur pursuant to the Plan, (f) the incurrence of all obligations contemplated by the Plan Documents and the making of all distributions under the Plan, and (g) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule or regulation.   The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors, Reorganized Debtors, Liquidating Trustee, or any member, manager, or officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code, including the filing and recordation of any and all liens and deeds of trust on the REO Property or the collateral securing the Notes Receivable.   Pursuant to section 1142, to the extent that, under applicable non-bankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the members, managers, shareholders, or board of directors or board of managers of the Debtors or Reorganized Debtors, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the decision-making entity or individual of the Debtors or Reorganized Debtors.   Any and all documents contemplated herein shall be accepted by each of the respective state filing offices and recorded, if required, in

accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

16.     <u>Plan Supplement and Plan Documents</u>.     The Plan Supplement and Plan Documents and any amendments, modifications, and/or supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referenced therein), and the execution, delivery, and performance thereof by the Debtors, Reorganized Debtors, or Liquidating Trustee are authorized and approved, including, without limitation, the Liquidating Trust Agreement. Without need for further order or authorization of this Court, the Debtors, Reorganized Debtors, and Liquidating Trustee and their successors are authorized and empowered to make any and all modifications to any and all of the documents comprising the Plan Supplement and the Plan Documents that do not materially modify the terms of such documents and are consistent with the Plan and the DSI Stipulation, subject to, as applicable, the agreement of the non-debtor counterparty.  The execution version of the Plan Supplement and the Plan Documents shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

17.     <u>Members and Managers</u>.  Pursuant to the Plan and this Confirmation Order, on the Effective Date (a) the Liquidating Trustee, for the benefit of the Liquidating Trust, shall be the sole member of the Reorganized R.E. Loans, (b) Reorganized R.E. Loans shall be the sole member of Reorganized R.E. Future and shall own all of the equity of Reorganized Capital Salvage, (c) Mackinac Partners, LLC shall serve as the manager of Reorganized R.E. Loans and

Reorganized R.E. Future, and (d) James A. Weissenborn shall be the sole director and the president of Reorganized Capital Salvage.

18.     <u>The Liquidating Trust</u>.  On or before the Effective Date, the Trust Agreement shall be executed by the parties thereto, and all other necessary steps shall be taken to establish the Liquidating Trust.  The Trust Assets shall be transferred to the Liquidating Trustee, for the benefit of the Liquidating Trust, in accordance with the provisions of the Plan.  Notwithstanding anything to the contrary herein, the transfer of claims to the Liquidating Trust does not diminish, and fully preserves, any rights and defenses a defendant would have if such claims had been retained by the Debtors.  To the extent that there is a conflict between the terms and conditions of the Plan and the terms and conditions of the Liquidating Trust, the terms and conditions of the Plan shall control.

19.     <u>Liquidating Trustee</u>.  Effective as of the Effective Date, Dennis Faulkner shall be the Liquidating Trustee.

20.     <u>Payment of Statutory Fees</u>.  All fees due and payable pursuant to section 1930 of title 28 of the United States Code, as determined by this Court, shall be paid on the Effective Date without the need to file any applications with this Court.  The Reorganized Debtors shall (a) continue to pay all fees due and payable pursuant to section 1930 of title 28 of the United States Code until the closing conversion or dismissal of the Cases and (b) provide the required post-confirmation reporting to the U.S. Trustee until the Cases are closed.

21.     <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto,

and any other acts referred to in or contemplated by the Plan Documents, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

22. <u>Filing and Recording</u>. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall be binding on and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan Documents and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law. This shall include, but is not limited to, any mortgage or deed of trust granting a Lien to Wells Fargo to secure the Wells Fargo Exit Facility

23. <u>Exemption from Transfer Taxes</u>. Pursuant to § 1146(c), the issuance, transfer, or exchange of assets under the Plan by the Debtors, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the

Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. This shall include, but shall not be limited to, any mortgage or deed of trust granting a Lien to Wells Fargo on the Reorganized Debtors' Assets (including, but not limited to the, Perdido Key property) to secure the Wells Fargo Exit Facility.

24.     <u>Discharge of Claims and Termination of Interests</u>.  Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims and terminate all Interests of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by § 1141.  Except as provided in the Plan, upon the occurrence of the Effective Date, all existing Claims against and Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, the Liquidating Trustee, the Liquidating Trust, or their successors or assigns, or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim or proof of Interest and whether or not the respective facts or legal bases were known or existed prior to the Effective  Date.

25.     <u>Release and Discharge of Debtors</u>.  Upon the occurrence of the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by § 1141, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the

Effective Date, all such persons shall be forever precluded and enjoined, pursuant to § 524, from prosecuting or asserting against the Reorganized Debtors or the Liquidating Trust any such discharged Claim against or terminated Interest in the Debtors.

26. <u>Injunction</u>. The Plan is the sole means for resolving, paying or otherwise dealing with Claims against and Interests in the Debtors and their Estates. Except as provided in the Plan, as of the Effective Date, all non-Debtor entities are permanently enjoined from commencing or continuing in any manner, any Cause of Action, whether directly, derivatively, on account of or respecting any Cause of Action of the Debtors, the Liquidating Trust or The Reorganized Debtors, which the Liquidating Trust or the Reorganized Debtors, as the case may be, retain sole and exclusive authority to pursue in accordance with the terms of the Plan, or which have been released pursuant to the Plan. Further, except as expressly provided herein (including under the terms of the Wells Fargo Exit Facility), at all times on and after the Effective Date, all Persons or governmental entities who have held, hold or may hold Claims against or Interests in the Debtors arising prior to the Effective Date are permanently enjoined (other than actions brought to enforce any rights or obligations under the Plan and any adversary proceedings pending in the Cases as of the Effective Date or the enforcement of any police or regulatory powers by any governmental agency) from:

(a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Liquidating Trust, the Liquidating Trustee or the Reorganized Debtors or any property of any such party with respect to any such Claim against or Interest in a Debtor;

(b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against the Liquidating

Trust, the Liquidating Trustee or the Reorganized Debtors or any property of any such party with respect to any such Claim against or Interest in a Debtor;

(c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Liquidating Trust, the Liquidating Trustee or the Reorganized Debtors or any property of any such party with respect to any such Claim against or Interest in a Debtor;

(d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to the Liquidating Trust, the Liquidating Trustee or the Reorganized Debtors or any property of any such party with respect to any such Claim against or Interest in a Debtor, unless approved by this Court; and

(e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim against or Interest in a Debtor.

27. <u>Preservation of Right to Litigate Claims</u>. Nothing contained in Section 10.8 of the Plan shall prohibit the holder of a Claim or Interest with respect to which a Proof of Claim was timely filed from litigating its right to seek to have such Claim or Interest declared an Allowed Claim or Interest and paid in accordance with the Distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtors, the Reorganized Debtors, Wells Fargo (as the lender under the Wells Fargo Exit Facility), or the Liquidating Trustee under the Plan.

28. <u>Exculpation and Releases</u>.

(a) No Protected Party shall have or incur any liability for, and each Protected Party is hereby released from, any and all Claims, liabilities, causes of action, rights, damages,

costs and obligations held by any party against any Protected Party, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due in any manner, relating to any act taken or omitted to be taken on or after the Petition Date in connection with, related to, or arising out of the Cases, the formulation, preparation, dissemination, implementation, confirmation, approval, or administration of the Plan or any compromises or settlements contained herein, the Disclosure Statement related thereto, the property to be distributed under the Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan, all of which shall be deemed fully waived, barred, released and discharged in all respects; provided, however, that nothing herein shall release or exculpate any Protected Party to the extent that such claims arise from the gross negligence, willful misconduct or fraud of such Protected Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction. This exculpation does not release any other Claims, liabilities, causes of action, rights, damages, costs or obligations held by any of the Debtors against any party, with the exception of the release of the Wells Fargo Group pursuant to the Wells Fargo Release and the Plan effective as of the Effective Date, and no such release is being granted by any of the Debtors under the Plan, though the Debtors reserve the right to seek authority to release or settle claims prior to the Effective Date if the Debtors believe that doing so is in the best interests of Creditors and the Estates.

(b) Without limiting the generality of the foregoing, no Protected Party shall have or incur any liability to any Person or governmental entity for its role, if any, in soliciting acceptances of the Plan in good faith, and shall be entitled to and granted all the protections and benefits of § 1125(e).

(c)      Each party to which this Section applies shall be deemed to have granted the releases set forth in this Section notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist.

(d)      Notwithstanding anything set forth above or elsewhere in the Plan, nothing in the Plan shall operate to discharge, release, preclude, exculpate or enjoin any Entity from or against its obligations under the Plan, the Trust Agreement or the Wells Fargo Exit Facility Loan Documents.

(e)      Notwithstanding anything set forth above or elsewhere in the Plan, nothing in the Plan shall operate to discharge, release, preclude, exculpate or enjoin the Liquidating Trust from pursuing any Causes of Action against Walter Ng, Barney Ng, Kelly Ng, Bruce Horwitz, Bar-K, or B-4 Partners, any other insider of the Debtors, or any professional employed by the Debtors prior to the Petition Date, based on any acts or omissions prior to the Petition Date, or objecting to any Claims asserted by such parties.

29.      <u>Wells Fargo Release by the Estates</u>.  Effective as of the Effective Date, all causes of action against Wells Fargo arising under or referred to in the DIP Financing Order or the DIP Facility are waived and barred.  Effective as of the Effective Date, for good and valuable consideration, the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors, the Debtors' Estates or the Reorganized Debtors, including estate representatives, completely and forever release, waive, void, extinguish, and discharge all

claims, causes of action (including, but not limited to, any actions arising under Chapter 5 of the Bankruptcy Code), obligations, suits, judgments, remedies, damages, demands, debts, rights, and liabilities whatsoever, that may be asserted by any of the Debtors, their Estates, or the Reorganized Debtors, or any party acting by, through, or under the Debtors, their Estates, or the Reorganized Debtors, against the Wells Fargo Group (or any member thereof), whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date, relating in any way to the Debtors, the Reorganized Debtors, the Debtors' Estates, the Cases, or the Plan. Further, the Wells Fargo Group (or any member thereof) shall be deemed to be completely and forever released and discharged from any and all claims and causes of action (but excluding any claims or causes of action that are owned by any party other than the Debtors, the Debtors' Estates or the Reorganized Debtors) including, without limitation: (i) the alleged causes of action described in the February 21, 2012 Motion to Assert Standing raised by the Noteholders' Committee and in any amended pleading to the February 21, 2012 Motion to Assert Standing, delivered to the Debtors and Wells Fargo; (ii) additional causes of action that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the February 21, 2012 Motion to Assert Standing and any amendment thereto; and (iii) all other objections, challenges, avoidance actions, and claims of any kind or nature against the Wells Fargo Group (or any member thereof), Wells Fargo's pre-petition claims and pre-petition liens, as more fully described in the applicable provisions of the DIP Financing Order, all of which are barred and waived, effective as of the Effective Date; provided, however, that nothing herein or in the Plan shall be deemed a waiver or release of any right of the Reorganized Debtors to

enforce any right or obligation of Wells Fargo under the Wells Fargo Exit Facility or any party in interest to enforce any rights it has under the Plan.

30.  <u>Survival of Provisions of DIP Financing Order</u>.  Notwithstanding anything to the contrary contained the Plan or in this Confirmation Order, until the DIP Facility Claim and the Wells Fargo Prepetition Claim have been indefeasibly paid in full in cash, (i) the DIP Financing Order and all of the liens, protections, benefits and priorities provided by the Debtors to Wells Fargo, as the holder of the DIP Facility Claim and the Wells Fargo Prepetition Claim, shall survive the Confirmation Date and continue in full force and effect; and (ii) the terms and conditions of the Wells Fargo Exit Facility Loan Documents shall continue in full force and effect, including, but not limited to, the conditions of borrowing, interest rate, payment, collateral, priority of liens, events of default, and maturity date.  The Debtors and/or the Reorganized Debtors shall satisfy the DIP Facility Claim and the Wells Fargo Prepetition Claim in accordance with Wells Fargo Exit Facility and the Plan.  Wells Fargo shall not be required to seek approval of this Court for any fees, payments, costs, or expenses incurred by Wells Fargo and to be paid to Wells Fargo on its DIP Facility Claim.  Pursuant to the terms of this Confirmation Order, effective as of the Effective Date, Wells Fargo (and the Wells Fargo Group), and any collateral of Wells Fargo, shall be released and discharged from any and all liability relating to a Carve-Out (as provided under the DIP Financing Order), but the Wells Fargo Exit Facility shall provide for the funding of such amounts otherwise payable to the Debtors' professionals and the Noteholders' Committee's professionals as provided under the DIP Financing Order.

31. <u>Exit Facility Commitment Letter and Wells Fargo Exit Facility</u>.

(a) The Debtors, on behalf of the Reorganized Debtors, are hereby authorized to enter into Exit Facility Commitment Letter with Wells Fargo, and to take any and all actions, including the execution and delivery of all such other documents consistent with the terms of the Exit Facility Commitment Letter.

(b) Upon the Effective Date, the Reorganized Debtors and each other Person having duties or responsibilities under the Plan, and all documents related thereto, and their respective directors, officers, general partners, managers, agents, representatives, and attorneys, are authorized and empowered to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Plan, the Plan Documents (inclusive of the Wells Fargo Exit Facility Loan Documents and the Loan and Security Agreement, as may be finalized, upon execution thereof by, among others, the Reorganized Debtors and Wells Fargo), and this Confirmation Order and the transactions contemplated thereby and hereby, all without further application to, or order of, this Court or further action by their respective directors, managers, members or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors, managers, members, and stockholders of such Persons. The President of Reorganized Capital Salvage and the manager of Reorganized R.E. Loans and Reorganized R.E. Future shall be, and hereby are, authorized to certify or attest to any of the foregoing actions and to execute such documents as may be necessary to effectuate the Plan and the Plan Documents as described above. Without limiting the generality of the foregoing, this Confirmation Order shall constitute all approvals and consents, if any, required by the General Corporation Law and Limited Liability Company Law of the State of California and all other applicable business corporation, limited liability company, trust, and other laws of the

applicable governmental units with respect to the Debtors' and the Reorganized Debtors' implementation and consummation of the Plan, the Plan Documents and this Confirmation Order and the transactions contemplated thereby.

(c) The Wells Fargo Exit Facility Loan Documents (inclusive of Loan and Security Agreement) as may be finalized, upon execution thereof by Wells Fargo and the Reorganized Debtors, are hereby authorized and approved.

32. <u>Preservation of Causes of Action; Note Receivable Claims</u>.

(a) <u>Preservation of Causes of Action; Designation of Estate Representative</u>. On the Effective Date, the Liquidating Trustee, as representative of each Debtor's Estate, shall retain and have the exclusive right to commence, pursue, enforce and settle, as appropriate, all Causes of Action (including all Avoidance Actions) that otherwise belong to a Debtor and arose before the Effective Date, including all Causes of Action of a trustee or debtor in possession under the Bankruptcy Code, other than those Causes of Action expressly released or compromised as part of or pursuant to the Plan or by other order of this Court entered prior to the Effective Date. As of the Effective Date, the Liquidating Trustee shall be authorized to exercise and perform the rights, powers and duties held by the Debtors' Estates with respect to all Causes of Action, including the authority under § 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of any such Causes of Action, without the consent or approval of any third party, and without any further order of this Court.

(b) <u>Preservation of Note Receivable Claims; Designation of Estate Representative</u>. Also on the Effective Date, the Reorganized Debtors, as the representatives of the respective Debtors' Estates, shall have the exclusive right to commence, pursue, enforce and settle, as appropriate, all Note Receivable Claims that otherwise belong to a Debtor and arose

before the Effective Date. As of the Effective Date, the Reorganized Debtors shall be authorized to exercise and perform the rights, powers and duties held by the Debtors' Estates with respect to all Note Receivable Claims, including the authority under § 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of any such Note Receivable Claims, without the consent or approval of any third party (except Wells Fargo as provided under the Wells Fargo Exit Facility), and without any further order of this Court, except as otherwise provided in this Section.

(c)     Description of Retained Causes of Action and Note Receivable Claims. Attached to the Plan as Exhibit "1" is a non-exhaustive list of all Causes of Action and Note Receivable Claims; provided, however, notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any claim or Cause of Action or any Note Receivable Claim, or potential Cause of Action or Note Receivable Claim, in the Plan, the Disclosure Statement, or any other document filed with this Court shall in no manner waive, eliminate, modify, release, or alter the Liquidating Trustee's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action, or Reorganized Debtors' right to pursue any Note Receivable Claim, that the Debtors or the Estates have or may have as of the Effective Date. Subject to the limitations expressly set forth in the Trust Agreement, the Liquidating Trustee may commence, prosecute, defend against, recover on account of, and settle all Causes of Action in its sole discretion in accordance with what is in the best interests, and for the benefit, of the Liquidating Trust, and the Reorganized Debtors may commence, prosecute, defend against, recover on account of, and settle all Note Receivable

Claims in their sole discretion in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtors, consistent with the terms of the Wells Fargo Exit Facility.

Unless a Cause of Action against a Person, Entity or a governmental entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Debtors expressly reserve such Causes of Action for later adjudication (including Causes of Action of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances which may change or be different from those which the Debtors now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Causes of Action have been expressly released by virtue of the Plan or other Final Order.

(d)    Reservation of Rights.  The failure to explicitly list any Cause of Action or Note Receivable Claim is not intended to limit the rights of the Liquidating Trustee or the Reorganized Debtors, as applicable, to pursue any such Cause of Action or Note Receivable Claim not so identified.  In this connection, the Liquidating Trustee and the Reorganized Debtors will continue to review payments made by and transactions involving the Debtors prior to the Petition Date to determine whether preference and other actions to avoid such payments and transactions should be brought.  Failure to specifically identify potential actions in the Plan shall not be deemed a waiver of any such action by any of the Debtors, the Reorganized Debtors, the Liquidating Trustee or any other party.

33.    <u>Vesting of Causes of Action in Liquidating Trust</u>.  Except to the extent that such Causes of Action have been released under the Plan or as otherwise provided under any orders of this Court, any Person or governmental entity with respect to which the Debtors have incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee, on behalf of the Liquidating Trust, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Person or governmental entity has filed a Proof of Claim against the Debtors; (ii) such Person's or governmental entity's Proof of Claim has been objected to by the Debtors; (iii) such Person's or governmental entity's Claim was included in the Bankruptcy Schedules; or (iv) such Person's or governmental entity's scheduled Claims have been objected to by the Debtors or have been identified by the Debtors as disputed, contingent, or unliquidated.

34.    <u>Causes of Action Against Former Noteholders</u>.  All Causes of Action against the Holders of Fully Repaid Exchange Notes are expressly preserved and shall vest in the Liquidating Trust on the Effective Date, and the Liquidating Trustee shall be vested with all rights to seek to avoid and recover payments made to Holders of Fully Repaid Exchange Notes as fraudulent conveyances or under any other applicable law.  Notwithstanding the foregoing, any Holder (other than the Debtors' insiders) of a Fully Repaid Exchange Note may obtain a full settlement, release and discharge of any Cause of Action to avoid and recover payments made on a Fully Repaid Exchange Note by tendering payment in cash to the Liquidating Trustee in an amount equal to 5% of the aggregate distributions and other payments received by such Holder

on account of such Fully Repaid Exchange Note. The Liquidating Trustee shall send the Settlement Letter to each former Noteholder (exclusive of any of the Debtors' insiders) that is the holder of a Fully Repaid Exchange Note not later than thirty (30) days after the Effective Date; provided, however, that the Liquidating Trustee shall have no obligation to extend the offer of settlement described in Section 7.6(c) of the Plan to any insider of the Debtor, or to anyone the Liquidating Trustee reasonably believes to have (i) obtained distributions in satisfaction of a Fully Repaid Exchange Note through fraud or collusion with any insider of a Debtor, or (ii) aided and abetted in the commission of fraud or breach of fiduciary duty by any insider of a Debtor.

35. Conclusion of the Cases and Dissolution of the Noteholders' Committee. Except with respect to any appeal of an order in the Cases, and any matters related to any proposed modification of the Plan, on the Effective Date, the Noteholders' Committee shall be dissolved and the members, employees, agents, advisors, affiliates and representatives (including, without limitation, attorneys, financial advisors, and other Professionals) of each thereof shall thereupon be released from and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from and in connection with or related to the Cases and shall be indemnified (including for reasonable attorneys' fees and costs) by the Liquidating Trust and (the Reorganized Debtors, if applicable) for any and all acts performed, or omissions, in connection with or related to the Cases, except for acts or omissions as shall constitute fraud, willful misconduct or gross negligence of their duties.

36. Modified Treatment of DSI Under the Plan. Notwithstanding the terms and conditions of the Plan setting forth the treatment of DSI's Claim, DSI's Claim, if any, shall be classified in Class REL 9 and shall be treated as set forth in the DSI Stipulation, which is

incorporated herein by this reference.   Unless a specific reference provides otherwise, all references to the "Plan" in this Order shall mean the Plan, as modified by the DSI Stipulation and this Confirmation Order.

37.    <u>Modification of the Plan</u>.    Subject to the restrictions set forth in § 1127, the Debtors (in consultation with Wells Fargo and the Noteholders' Committee) reserve the right to alter, amend, or modify the Plan at any time prior to Confirmation or after Confirmation and before the Plan is substantially consummated (subject to the terms of the Wells Fargo Exit Facility or the DIP Facility, as applicable).   Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of this Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests (subject to the terms of the Wells Fargo Exit Facility or the DIP Facility, as applicable).

38.    <u>Post-Confirmation Date Professional Fees and Expenses</u>.   From and after the Effective Date, Reorganized Debtors, or Liquidating Trustee, as applicable, shall, in the ordinary course of business and without the necessity for any approval by this Court, pay the reasonable fees and expenses of Professionals thereafter incurred.

39.    <u>Notice of Entry of Confirmation Order</u>.   Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Debtors shall file and serve notice of entry of this Confirmation Order in substantially the form annexed hereto as <u>Exhibit "B"</u> (the "**Notice of Confirmation Order**") on all parties entitled to receive notice in the Cases, by causing the Notice of Confirmation Order to be delivered to such parties by first-class mail, postage prepaid, within ten (10) business days after entry of this Confirmation Order; <u>provided</u>, <u>however</u>, that the Confirmation Notice shall not be served on any person or entity to whom the Debtors have mailed other notices during the

Cases that have been returned as undelivered, unless the Debtors have been informed in writing by such person or entity of that person or entity's new address.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.  The form of Notice of Confirmation Order substantially in the form annexed hereto as Exhibit "B" is approved.

40.    Notice of Effective Date.  Within three (3) Business Days after the occurrence of the Effective Date, the Reorganize Debtors shall file notice of the occurrence of the Effective Date (the "**Notice of Effective Date**") and shall serve a copy of same on all parties entitled to receive notice in the Cases; provided, however, that the Notice of Effective Date shall not be served on any person or entity to whom the Debtors have mailed other notices during the Cases that have been returned as undelivered, unless the Debtors have been informed in writing by such person or entity of that person or entity's new address.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

41.    Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Section 11.1 of the Plan have been satisfied or waived pursuant to Section 11.2 of the Plan.

42.    Effect of Failure of Conditions to Effective Date.  If the conditions precedent specified in Section 11.1 of the Plan have not been satisfied or waived pursuant to Section 11.2 of the Plan, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors, Reorganized Debtors, or any other Person in any further proceedings involving the Debtors, Reorganized Debtors, or any other Person.

43. <u>Retention of Jurisdiction</u>. Upon the Effective Date, this Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Section 12.15 of the Plan and section 1142 of the Bankruptcy Code. The Court shall also retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Confirmation Order and as provided in the DSI Stipulation. . In addition, this Court shall retain jurisdiction over matters concerning the REO Property and the Notes Receivable (including, but not limited to, the disposition of same, claims or liens with respect to same, or any disputes with respect thereto), to the extent that the Reorganized Debtors wish to obtain Court authority for such transactions notwithstanding the terms of the Plan and the emergence of the Debtors from these bankruptcy proceedings and the administrative priority tax Claims issues listed in Paragraph 46(b), below.

44. <u>Appeal of the Confirmation Order</u>. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, Reorganized Debtors, or Liquidating Trust, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto and shall remain binding on Reorganized Debtors or Liquidating Trustee, as the case may be.

45. <u>Severability</u>. Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

46. <u>Objections</u>.

(a) The following taxing authorities filed objections to confirmation of the Plan: (i) Multnomah County and Washington County, Oregon [Docket No. 931]; (ii) Sierra County, California [Docket No. 939]; (iii) Harris, County, Texas [Docket No. 936]; (iv) Williamson County, Texas [Docket No. 938]; and (v) Humble Independent School District [Docket No. 920] (collectively, the "**Secured Tax Claim Objections**"). While articulated in different ways, each of the Secured Tax Claim Objections objected to confirmation of the Plan on one or more of the following grounds: (1) the Plan did not provide separately for the treatment of administrative priority ad valorem tax claims; (2) the requirement of Bankruptcy Code § 1129(a)(9)(C) and (D) for "regular installments" was not satisfied by the Debtors' proposal to make quarterly payments of interest only at the statutory rate required by Bankruptcy Code § 511, with the entire principal balance being paid upon the earlier of a sale of collateral for a particular Secured Tax Claim or the 5-year anniversary date of the Petition Date; and (3) the Plan unfairly discriminates against taxing authorities by providing for the payment of Wells Fargo's secured claim not later than September 30, 2013, which is earlier than the assured payment of Secured Tax Claims.

(b) The Debtors stated on the record that Secured Tax Claims (as defined in the Plan) do not include claims that are entitled to priority as expenses of administration pursuant to Bankruptcy Code § 503(b) or claims that become payable after the Effective Date of the Plan. The Debtors agreed that the Plan does not, therefore, extend the time period for paying such tax claims. Each taxing authority will have the right to enforce any tax Claims that are entitled to

administrative priority (including any administrative priority Claims that are secured) that become payable after the Effective Date pursuant to applicable state law if the Debtors fail to pay such taxes before they become past due and delinquent under applicable state law. If the parties disagree as to whether ad valorem taxes for a particular period are entitled to priority as administrative expenses or the amount of any administrative priority tax Claim, this Court shall retain jurisdiction to determine what taxes are entitled to such priority based on a request for such a determination made by either the taxing authority or the Reorganized Debtors.

(c) This Court found that (i) the Plan does not unfairly discriminate against the taxing authorities, because each secured creditor is entitled to be paid from the proceeds of its collateral when and if its collateral is sold free and clear of liens; (ii) each taxing authority will be entitled to payment in full from any sale of their respective collateral, free and clear of the tax liens; and (iii) if the Reorganized Debtors sell any REO Property subject to the existing liens securing Secured Tax Claims, the Secured Tax Claims shall be all due and payable under applicable state law immediately upon the consummation of such sale, and shall no longer be subject to the payment terms provided to holders of Class 3 under the Plan. The Allowed Claims of each holder of a Class 3 Claim will include interest from the Petition Date through the Effective Date at the statutory rate required by Bankruptcy Code § 511. For the reasons stated on the record at the Confirmation Hearing, the Court further ruled that payment of interest only at the statutory rate required by Bankruptcy Code § 511 on a quarterly basis commencing from and after the Effective Date complies with Bankruptcy Code § 1129(a)(9)(C) and (D) and, therefore, the Secured Tax Claim Objections are overruled. To the extent that any additional objections were asserted under the Secured Tax Claim Objections, this Court overruled those objections for the reasons stated on the record.

(d)     The Debtors stipulated on the record at the Confirmation Hearing that confirmation of the Plan is without prejudice to the motion filed by Wadsworth Golf Construction for relief from the automatic stay, which is currently under consideration by this Court.  If this Court rules that relief from the automatic stay is appropriate, such relief granted will include relief from the injunctive provisions of the Plan and this Confirmation Order.  If this Court does not rule that relief from the automatic stay should be granted, the Debtors further stated on the record that Wadsworth Golf Construction can assert its right against the Reorganized Debtors, including without limitation, any right to declaratory relief, in appropriate proceedings before this Court.  While the Debtors have reserved the right to defend against any such request for relief on all grounds available, including without limitation the argument that Wadsworth Golf Construction's only remedy is to assert a General Unsecured Claim against the Debtors, the Debtors stipulated on the record that this Court can address the merits of any such claim presented by Wadsworth Golf Construction, notwithstanding confirmation of the Plan. These acknowledgments by the Debtors address the substance of the *Limited Objection of Wadsworth Golf Construction Company to the Confirmation of the Debtors' Fourth Amended Chapter 11 Plan* [Docket No. 937], and that limited objection is otherwise overruled.

47.     <u>Conflicts Between Confirmation Order and Plan</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order or any further order of this Court contemplated by this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.  The provisions of the Plan Documents, this Confirmation Order, and any further order of this Court contemplated by this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided,</u>

<u>however</u>, that if there is any inconsistency between the provisions of the Plan Documents and this Confirmation Order or any further order of this Court contemplated by this Confirmation Order, the terms and conditions contained in this Confirmation Order or such further order of this Court shall govern and shall be deemed a modification to the Plan and shall control and take precedence. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

48.    <u>Stay of Confirmation Order</u>.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062, or otherwise.

49.    <u>Plan Documents</u>.  Attached hereto as <u>Exhibits "C", "D", and "E"</u> are true and correct copies of the revised forms of the following documents:

Exhibit "C":    Liquidating Trust Agreement

Exhibit "D":    Loan and Security Agreement

Exhibit "E":    Servicing and Management Agreement

The  Reorganized Debtors are authorized to execute and deliver each of these operative agreements, and any ancillary documents referenced therein or contemplated thereby, as of the Effective Date in the forms attached hereto and to agree to modifications thereto so long as any such modifications are not material.

**Exhibits referenced herein are attached hereto at [Docket No. 966].**

# # # End of Order # # #

Agreed To By:

*/s/ Holland O'Neil*
Stephen A. McCartin (TX 13374700)
Holland O'Neill  (TX 14864700)
Virgil Ochoa (TX 24070358)
**GARDERE WYNNE SEWELL LLP**
1601 Elm Street, Suite 3000
Dallas, TX 75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667

and

*/s/ Gregory Jones*
Gregory K. Jones (Cal. 181072)
**STUTMAN, TREISTER & GLATT**
**PROFESSIONAL CORPORATION**
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:  (310) 228-5600
Facsimile:  (310) 228-5788
gjones@stutman.com

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

and

*/s/ Jeffrey Krause*
Jeffrey C. Krause (Cal. 94053)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520
jkrause@gibsondunn.com

**PROPOSED COUNSEL FOR**
**DEBTORS AND DEBTORS IN POSSESSION**

*/s/ Michael P.Cooley*
Charles R. Gibbs (TX 07846300)
Michael P. Cooley (TX 24034388)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2727
Facsimile: (214) 969-4343
cgibbs@akingump.com
mcooley@akingump.com

**COUNSEL FOR OFFICIAL COMMITTEE OF NOTEHOLDERS**


*/s/ David Weitman*
David Weitman (TX 21116200)
Artoush Varshosaz (TX 24066234)
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, Texas 75201
Telephone: (214) (939-5427
david.weitman@klgates.com
artoush.varshosaz@klgates.com

**COUNSEL FOR WELLS FARGO CAPITAL FINANCE, LLC**